# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF TEXAS

### MARSHALL DIVISION

| | | |
|---|---|---|
| **LINCOLN J. UNRUH,** | § | |
| | § | |
| *Plaintiffs*, | § | Civil Action No.   2:13cv234 |
| | § | |
| **v.** | § | |
| | § | |
| **HUAWEI TECHNOLOGIES CO.,** | § | **JURY TRIAL DEMANDED** |
| **LTD., and FUTUREWEI** | § | |
| **TECHNOLOGIES, INC.,** | § | |
| | § | |
| *Defendants*. | § | |

## COMPLAINT

Plaintiff, Lincoln J. Unruh ("Unruh"), files this Complaint against Defendants, Huawei Technologies Co., Ltd. and Futurewei Technologies, Inc. (herein, collectively, "Defendants"), and for his cause of action alleges:

### THE PARTIES

1.      Lincoln J. Unruh is a Colorado resident, with an address of 9249 S. Broadway, Unit 200, Suite 239, Highlands Ranch, CO 80129.

2.      Upon information and belief, Huawei Technologies Co., Ltd., is a corporation organized and existing under the laws of China, with its principal place of business at Bantian, Longgang District, Shenzhen 518129, P.R. China.

3.      Upon information and belief, Futurewei Technologies, Inc., is an indirect subsidiary of Huawei Technologies Co., Ltd., and is a corporation organized and existing under the laws of Texas, with its principal place of business at 5700 Tennyson Parkway, Suite 500, Plano, Texas 75024.

**THE PATENTS**

4.      On June 27, 2006, United States Patent No. 7,068,610, entitled "System and Method for Reliable Communications Over Multiple Packet RF Networks," was duly and legally issued ("the '610 patent"). A true and correct copy of the '610 patent is attached as **Exhibit A**.

5.      On April 22, 2008, United States Patent No. 7,362,716, also entitled "System and Method for Reliable Communications Over Multiple Packet RF Networks," was duly and legally issued ("the '716 patent"). The '716 patent is a continuation of Application No. 10/086,182, filed on February 26, 2002, now United States Patent No. 7,068,610. A true and correct copy of the '716 patent is attached as **Exhibit B**.

6.      On December 13, 2011, United States Patent No. 8,077,735, also entitled "System and Method for Reliable Communications Over Multiple Packet RF Networks," was duly and legally issued ("the '735 patent"). The '735 patent is a continuation of Application No. 11/475,545, filed on June 27, 2006, now United States Patent No. 7,362,716, which is a continuation of Application No. 10/086,182, filed on February 26, 2002, now United States Patent No. 7,068,610. A true and correct copy of the '735 patent is attached as **Exhibit C**.

7.      Pursuant to 35 U.S.C. § 282, the '610, '716 and '735 patents are presumed valid.

8.      Unruh is the sole owner of all substantial rights in the '610, '716 and '735 patents, including the exclusive right to grant sublicenses to those patents and to file lawsuits and seek damages for past, present, and future infringement of one or more of those patents against the Defendants.

**JURISDICTION AND VENUE**

9.      This action arises under the patent laws of the United States, Title 35 United States Code, particularly §§ 271, 281, 283, 284, and 285.  This Court has jurisdiction over the claims for patent infringement under 28 U.S.C. §§ 1331 and 1338(a).

10.      Personal jurisdiction exists generally over each of the Defendants because each Defendant has sufficient minimum contacts with the forum as a result of business conducted within the State of Texas and within this District.  Personal jurisdiction exists specifically over each of the Defendants because each Defendant, directly or indirectly, itself or through subsidiaries or intermediaries, makes, uses, offers for sale, or sells products or services within the State of Texas and within this District, or makes or sells products that are sold or used within the State of Texas and within this District, that infringe the patents-in-suit.  Personal jurisdiction exists over Defendant Futurewei Technologies, Inc., because it is a corporation organized and existing under the laws of the State of Texas, with its principal place of business in this District.

11.      Venue is proper in this Court under Title 28 United States Code §§ 1391(b) and (c) and 1400(b).

**COUNT I:  FIRST CLAIM FOR RELIEF**
**(INFRINGEMENT OF U.S. PATENT NO. 7,068,610)**

12.      Defendants, on information and belief, make, use, sell, or offer to sell products that infringe at least claims 1, 2, 3, 5, 6, 9, 11 and 18 of the '610 patent, including, for example and without limitation, the Ascend Q, Mercury, Ascend, Ascend X, U8500, s7 Slim, Tablet with GSM Voice, U9000 Ideos X6, U9000 Ideos X5, and U8150 Ideos models (the"Accused Products"), as well as any other devices that use similar technology as described and claimed in the '610 patent.

**Direct Infringement**

13.     By so making, using, selling, or offering to sell within the United States, or importing into the United States, at least the aforementioned Accused Products, Defendants have directly infringed and continue to directly infringe at least claims 1, 2, 3, 5, 6, 9, 11 and 18 of the '610 patent, either literally or by equivalents.

**Inducement of Infringement**

14.     Prior to being served with the Complaint in this lawsuit, Defendants were (and still are) one of the most recognized manufacturers of wireless telecommunications devices in the world.  Upon information and belief, over 1,000 United States patents or patent applications have been issued or assigned to one or more of the Defendants.

15.     Upon information and belief, the '610 patent and its patent family are known to those in the telecommunications industry, particularly those companies that are industry leaders, including Defendants.   Further, at least two U.S. patents assigned to Defendant Huawei Technologies Co., Ltd. (U.S. Patent Nos. 7,519,036 and 8,077,688), cited and discussed Unruh's U.S. Patent Publication No. US 2007/0014270 (which matured into Unruh's '716 patent) in their file histories.  In fact, Unruh's U.S. Patent Publication No. US 2007/0014270 was referenced by the Examiner of Huawei Technologies Co., Ltd.'s U.S. Patent No. 7,519,036 in an Office Action dated August 2, 2007, as a basis for rejecting one of the patent's then-pending claims.  A true and correct copy of the referenced Office Action is attached as **Exhibit D**.

16.     At least as early as the serving of the Complaint in this lawsuit, Defendants had actual knowledge of the '610 patent as a matter of law.

17.     At least as early as the serving of the Complaint in this lawsuit, Defendants were willfully blind towards the existence of the '610 patent.

Case 2:13-cv-00234 Document 1 Filed 03/26/13 Page 5 of 15 PageID #: 160

18.     Since becoming aware of the '610 patent, Defendants have continued to intentionally, actively, and knowingly advertise about, import, export, sell, offer to sell, lease, and/or offer to lease one or more of the Accused Products through their websites, retailers, resellers and distributors, as well as in other ways.

19.     Since becoming aware of the '610 patent, Defendants' advertising and sales of one or more of the Accused Products have intentionally, actively, knowingly, and willfully contained and continue to contain instructions, directions, suggestions, and/or invitations that intentionally, actively, and knowingly invite, entice, lead on, influence, prevail on, move by persuasion, cause, and/or influence the public, Defendants' distributors, Defendants' retailers, Defendants' customers, and/or HUAWEI.com website users to, at least, import, export, make, use, sell, offer to sell, lease and/or offer to lease one or more of the Accused Products to practice the inventions claimed in the '610 patent, and thus directly infringe the '610 patent, either literally or by equivalents.

20.     Since becoming aware of the '610 patent, Defendants have been willfully blind, have known, or should have known that the public's, the distributors', the retailers', the customers' and/or the website users' acts relative to importing, exporting, making, using, selling, offering to sell, leasing, and/or offering to lease one or more of the Accused Products to practice the inventions claimed in the '610 patent, directly infringe, either literally or by equivalents, at least claims 1, 2, 3, 5, 6, 9, 11 and 18  of the '610 patent.

21.     For these reasons, Defendants are liable for inducing infringement of the '610 patent.

## Contributory Infringement

22.     At least for the reasons stated above, Defendants have had actual knowledge of the '610 patent or, at a minimum, have been willfully blind towards the existence of the '610 patent.

23.     Since becoming aware of the '610 patent, Defendants have intentionally, actively, and knowingly offered to sell or sold the Accused Products within the United States or imported the Accused Products into the United States.

24.     By selling, offering to sell, and/or importing into the United States one or more of the Accused Products and the components thereof, Defendants have contributed to infringement by the public, the distributors, the retailers, the customers and the website users who import, export, make, use, sell, offer to sell, lease, and/or offer to lease one or more of the Accused Products to practice the inventions claimed in the '610 patent, and thus directly infringe the '610 patent, either literally or under the doctrine of equivalents.

25.     Since becoming aware of the '610 patent, Defendants have been willfully blind, have known, or should have known that the Accused Products are especially made or especially adapted for use in an infringement of at least claims 1, 2, 3, 5, 6, 9, 11 and 18  of the '610 patent.

26.     The Accused Products are not a staple article or commodity of commerce suitable for substantial noninfringing use because they are especially configured to infringe at least claims 1, 2, 3, 5, 6, 9, 11 and 18  of the '610 patent, either literally or under the doctrine of equivalents.

27.     Since becoming aware of the '610 patent, Defendants have been willfully blind, have known, or should have known that the Accused Products are not a staple article or commodity of commerce suitable for substantial noninfringing use.

28.     For these reasons, Defendants are contributory infringers of at least claims 1, 2, 3, 5, 6, 9, 11 and 18 of the '610 patent, either literally or under the doctrine of equivalents.

### COUNT II:  SECOND CLAIM FOR RELIEF
### (INFRINGEMENT OF U.S. PATENT NO. 7,362,716)

29.     Defendants, on information and belief, make, use, sell, or offer to sell products that infringe at least claims 1, 2, 3, 5, 6, 9 and 11 of the '716 patent, including, for example and without limitation, the Ascend Q, Mercury, Ascend, Ascend X, U8500, s7 Slim, Tablet with GSM Voice, U9000 Ideos X6, U9000 Ideos X5, and U8150 Ideos models (the "Accused Products"), as well as any other devices that use similar technology as described and claimed in the '716 patent.

### Direct Infringement

30.     By so making, using, selling, or offering to sell within the United States, or importing into the United States, at least the aforementioned Accused Products, Defendants have directly infringed and continue to directly infringe at least claims 1, 2, 3, 5, 6, 9 and 11 of the '716 patent, either literally or by equivalents.

### Inducement of Infringement

31.     Prior to being served with the Complaint in this lawsuit, Defendants were (and still are) one of the most recognized manufacturers of wireless telecommunications devices in the world.  Upon information and belief, over 1,000 United States patents or patent applications have been issued or assigned to one or more of the Defendants.

32.     As noted above, the '716 patent and its patent family are known to those in the telecommunications industry, particularly those companies that are industry leaders, including Defendants.  Further, at least two U.S. patents assigned to Defendant Huawei Technologies Co., Ltd. (U.S. Patent Nos. 7,519,036 and 8,077,688), cited and discussed Unruh's U.S. Patent

Publication No. US 2007/0014270 (which matured into Unruh's '716 patent) in their file histories. In fact, Unruh's U.S. Patent Publication No. US 2007/0014270 was referenced by the Examiner of Huawei Technologies Co., Ltd.'s U.S. Patent No. 7,519,036, in an Office Action dated August 2, 2007, as a basis for rejecting one of the patent's then-pending claims. A true and correct copy of the referenced Office Action is attached as **Exhibit D**.

33.     At least as early as the serving of the Complaint in this lawsuit, Defendants had actual knowledge of the '716 patent as a matter of law.

34.     At least as early as the serving of the Complaint in this lawsuit, Defendants were willfully blind towards the existence of the '716 patent.

35.     Since becoming aware of the '716 patent, Defendants have continued to intentionally, actively, and knowingly advertise about, import, export, sell, offer to sell, lease, and/or offer to lease one or more of the Accused Products through their websites, retailers, resellers and distributors, as well as in other ways.

36.     Since becoming aware of the '716 patent, Defendants' advertising and sales of one or more of the Accused Products have intentionally, actively, knowingly, and willfully contained and continue to contain instructions, directions, suggestions, and/or invitations that intentionally, actively, and knowingly invite, entice, lead on, influence, prevail on, move by persuasion, cause, and/or influence the public, Defendants' distributors, Defendants' retailers, Defendants' customers, and/or HUAWEI.com website users to, at least, import, export, make, use, sell, offer to sell, lease and/or offer to lease one or more of the Accused Products to practice the inventions claimed in the '716 patent, and thus directly infringe the '716 patent, either literally or by equivalents.

37.     Since becoming aware of the '716 patent, Defendants have been willfully blind, have known, or should have known that the public's, the distributors', the retailers', the customers' and/or the website users' acts relative to importing, exporting, making, using, selling, offering to sell, leasing, and/or offering to lease one or more of the Accused Products to practice the inventions claimed in the '716 patent, directly infringe, either literally or by equivalents, at least claims 1, 2, 3, 5, 6, 9 and 11 of the '716 patent.

38.     For these reasons, Defendants are liable for inducing infringement of the '716 patent.

### Contributory Infringement

39.     At least for the reasons stated above, Defendants have had actual knowledge of the '716 patent or, at a minimum, have been willfully blind towards the existence of the '716 patent.

40.     Since becoming aware of the '716 patent, Defendants have intentionally, actively, and knowingly offered to sell or sold the Accused Products within the United States or imported the Accused Products into the United States.

41.     By selling, offering to sell, and/or importing into the United States one or more of the Accused Products and the components thereof, Defendants have contributed to infringement by the public, the distributors, the retailers, the customers and the website users who import, export, make, use, sell, offer to sell, lease, and/or offer to lease one or more of the Accused Products to practice the inventions claimed in the '716 patent, and thus directly infringe the '716 patent, either literally or under the doctrine of equivalents.

42.     Since becoming aware of the '716 patent, Defendants have been willfully blind, have known, or should have known that the Accused Products are especially made or especially adapted for use in an infringement of at least claims 1, 2, 3, 5, 6, 9 and 11 of the '716 patent.

43.     The Accused Products are not a staple article or commodity of commerce suitable for substantial noninfringing use because they are especially configured to infringe at least claims 1, 2, 3, 5, 6, 9 and 11 of the '716 patent, either literally or under the doctrine of equivalents.

44.     Since becoming aware of the '716 patent, Defendants have been willfully blind, have known, or should have known that the Accused Products are not a staple article or commodity of commerce suitable for substantial noninfringing use.

45.     For these reasons, Defendants are contributory infringers of at least claims 1, 2, 3, 5, 6, 9 and 11 of the '716 patent, either literally or under the doctrine of equivalents.

## COUNT III:  THIRD CLAIM FOR RELIEF
## (INFRINGEMENT OF U.S. PATENT NO. 8,077,735)

46.     Defendants, on information and belief, make, use, sell, or offer to sell products that infringe at least claims 1, 2, 3, 5, 6, 9 and 11 of the '735 patent, including, for example and without limitation, the Ascend Q, Mercury, Ascend, Ascend X, U8500, s7 Slim, Tablet with GSM Voice, U9000 Ideos X6, U9000 Ideos X5, and U8150 Ideos models (the "Accused Products"), as well as any other devices that use similar technology as described and claimed in the '735 patent.

## Direct Infringement

47.     By so making, using, selling, or offering to sell within the United States, or importing into the United States, at least the aforementioned Accused Products, Defendants have directly infringed and continue to directly infringe at least claims 1, 2, 3, 5, 6, 9 and 11 of the '735 patent, either literally or by equivalents.

## Inducement of Infringement

48.     Prior to being served with the Complaint in this lawsuit, Defendants were (and still are) one of the most recognized manufacturers of wireless telecommunications devices in the world.  Upon information and belief, over 1,000 United States patents or patent applications have been issued or assigned to one or more of the Defendants.

49.     Upon information and belief, the '735 patent and its patent family are known to those in the telecommunications industry, particularly those companies that are industry leaders, including Defendants.  The '735 patent is a continuation of Application No. 11/475,545, filed on June 27, 2006, now the '716 patent.  At least two U.S. patents assigned to Defendant Huawei Technologies Co., Ltd. (U.S. Patent Nos. 7,519,036 and 8,077,688), cited and discussed Unruh's U.S. Patent Publication No. US 2007/0014270 (which matured into Unruh's '716 patent) in their file histories.  In fact, Unruh's U.S. Patent Publication No. US 2007/0014270 was referenced by the Examiner of Huawei Technologies Co., Ltd.'s U.S. Patent No. 7,519,036, in an Office Action dated August 2, 2007, as a basis for rejecting one of the patent's then-pending claims.  A true and correct copy of the referenced Office Action is attached as **Exhibit D**.

50.     At least as early as the serving of the Complaint in this lawsuit, Defendants had actual knowledge of the '735 patent as a matter of law.

51.     At least as early as the serving of the Complaint in this lawsuit, Defendants were willfully blind towards the existence of the '735 patent.

52.     Since becoming aware of the '735 patent, Defendants have continued to intentionally, actively, and knowingly advertise about, import, export, sell, offer to sell, lease, and/or offer to lease one or more of the Accused Products through their websites, retailers, resellers and distributors, as well as in other ways.

53.     Since becoming aware of the '735 patent, Defendants' advertising and sales of one or more of the Accused Products have intentionally, actively, knowingly, and willfully contained and continue to contain instructions, directions, suggestions, and/or invitations that intentionally, actively, and knowingly invite, entice, lead on, influence, prevail on, move by persuasion, cause, and/or influence the public, Defendants' distributors, Defendants' retailers, Defendants' customers, and/or HUAWEI.com website users to, at least, import, export, make, use, sell, offer to sell, lease and/or offer to lease one or more of the Accused Products to practice the inventions claimed in the '735 patent, and thus directly infringe the '735 patent, either literally or by equivalents.

54.     Since becoming aware of the '735 patent, Defendants have been willfully blind, have known, or should have known that the public's, the distributors', the retailers', the customers' and/or the website users' acts relative to importing, exporting, making, using, selling, offering to sell, leasing, and/or offering to lease one or more of the Accused Products to practice the inventions claimed in the '735 patent, directly infringe, either literally or by equivalents, at least claims 1, 2, 3, 5, 6, 9 and 11 of the '735 patent.

55.     For these reasons, Defendants are liable for inducing infringement of the '735 patent.

## Contributory Infringement

56.     At least for the reasons stated above, Defendants have had actual knowledge of the '735 patent or, at a minimum, have been willfully blind towards the existence of the '735 patent.

57.     Since becoming aware of the '735 patent, Defendants have intentionally, actively, and knowingly offered to sell or sold the Accused Products within the United States or imported the Accused Products into the United States.

58.     By selling, offering to sell, and/or importing into the United States one or more of the Accused Products and the components thereof, Defendants have contributed to infringement by the public, the distributors, the retailers, the customers and the website users who import, export, make, use, sell, offer to sell, lease, and/or offer to lease one or more of the Accused Products to practice the inventions claimed in the '735 patent, and thus directly infringe the '735 patent, either literally or under the doctrine of equivalents.

59.     Since becoming aware of the '735 patent, Defendants have been willfully blind, have known, or should have known that the Accused Products are especially made or especially adapted for use in an infringement of at least claims 1, 2, 3, 5, 6, 9 and 11 of the '735 patent.

60.     The Accused Products are not a staple article or commodity of commerce suitable for substantial noninfringing use because they are especially configured to infringe at least claims 1, 2, 3, 5, 6, 9 and 11 of the '735 patent, either literally or under the doctrine of equivalents.

61.     Since becoming aware of the '735 patent, Defendants have been willfully blind, have known, or should have known that the Accused Products are not a staple article or commodity of commerce suitable for substantial noninfringing use.

62. For these reasons, Defendants are contributory infringers of at least claims 1, 2, 3, 5, 6, 9 and 11 of the '735 patent, either literally or under the doctrine of equivalents.

63. By so making, using, selling, and/or offering to sell the aforementioned products, each of the Defendants named in this Complaint has and continues to infringe, either literally or by equivalents, directly and/or by inducement and/or contribution, Unruh's rights in the '610, '716 and/or '735 patents.

64. In addition to their direct infringement of the '610, '716 and/or '735 patents, as described above, each of the Defendants named in this Complaint is liable for actively inducing direct infringement by distributors, retailers, and end-users who sell, offer for sale, purchase, and/or use the aforementioned products.

65. The infringement of the '610, '716 and/or '735 patents alleged above has injured Unruh, and Unruh is thus entitled to recover damages adequate to compensate for Defendants' infringement, which in no event can be less than a reasonable royalty.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Lincoln J. Unruh ("Unruh") prays for entry of judgment:

A. That Defendants have infringed one or more claims of the '610, '716 and/or '735 patents;

B. That Defendants account for and pay Unruh all damages caused by Defendants' infringement of the '610, '716 and/or '735 patents, which by statute can be no less than a reasonable royalty;

C. That Unruh be granted pre-judgment and post-judgment interest on the damages caused to it by reason of Defendants' infringement of the '610, '716 and/or '735 patents;

D. That Unruh be granted its attorneys' fees in this action;

E.      That Unruh be awarded its costs in this action;

F.      That Unruh be granted such other and further relief that is just and proper under

the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiff Lincoln J. Unruh demands a jury trial on all claims and issues so triable.

Respectfully submitted,

Eric M. Albritton
Texas State Bar No. 00790215
ema@emafirm.com
Michael A. Benefield
Texas State Bar No. 24073408
mab@emafirm.com
ALBRITTON LAW FIRM
P.O. Box 2649
Longview, Texas 75606
Telephone:  (903) 757-8449
Facsimile:  (903) 758-7397

Andrew Kochanowski
State Bar No. P55117
AKochanowski@sommerspc.com
Lisa R. Mikalonis
State Bar No. P39485
LMikalonis@sommerspc.com
Krista M. Hosmer
State Bar No. P68939
KHosmer@sommerspc.com
**SOMMERS SCHWARTZ, P.C.**
One Towne Square, Suite 1700
Southfield, MI  48076
Telephone:  (248) 355-0300
Facsimile:  (248) 936-2153

*Counsel for Lincoln J. Unruh*

15